UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | BANKRUPTCY CASE NO. |
| THRU, INC., | ) | |
| | ) | 17-31034-SGJ-11 |
| Debtor. | ) | |
| ------------------------------------------------------ | ) | |
| DROPBOX, INC., | ) | |
| | ) | CIVIL ACTION NO. |
| Appellant, | ) | |
| | ) | 3:17-CV-1958-G |
| VS. | ) | |
| | ) | CONSOLIDATED WITH |
| THRU, INC., ET AL., | ) | |
| | ) | 3:17-CV-1959-G |
| Appellees. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is a consolidated appeal from the bankruptcy court's July 10, 2017 entry of its Findings of Fact, Conclusions of Law, and Order Confirming Amended Chapter 11 Plan of Reorganization (as Modified) of Thru, Inc., Debtor and Debtor in Possession (Record on Appeal, Volume 1 at 000013) and Order Denying Motion (Record on Appeal, Volume 1 at 000044). Also before the court is the appellees' motion to dismiss the consolidated appeal for equitable mootness (docket entry 19). For the reasons set forth below, the appellees' motion to dismiss for equitable mootness is granted in part and denied in part. Additionally, for the

reasons below, the bankruptcy court's decision is affirmed in part and reversed in part.

## I.  BACKGROUND

### A.  Nature of the Appeal and Procedural History

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 158, which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."[1]  28 U.S.C. § 158(a)(1).

The issues in this bankruptcy appeal relate to equitable mootness, the bankruptcy court's decision to confirm the appellees' plan of reorganization, and the bankruptcy court's decision to deny the appellant's motion to appoint a Chapter 11 trustee.  *See* Brief in Support of Motion to Dismiss Appellant's Consolidated Appeals for Equitable Mootness ("Appellees' Brief in Support") at 1-3 (docket entry 20); Brief of Appellant at 2-6 (docket entry 14).

The appellees are a group comprised of Thru Inc., Thru Limited Liability Company, Lee Harrison, Eliza McCoy and Roderic Holliday-Smith.  Originally

---

[1]     Under 28 U.S.C. § 157, the confirmation of a plan of reorganization is one of the "core proceedings" subject to this court's appellate review. 28 U.S.C. § 157(b)(1), (b)(2)(L); 28 U.S.C. § 158(a)(1).

founded in 2002, appellee Thru, Inc. ("the debtor") is a technology company that provides cloud-based virtual file systems to businesses, allowing these businesses to share data among themselves. Transcript of Proceedings Held on June 27, 2017 at 28 (Record on Appeal, Volume 12 at 002526) (docket entry 6-12); Appellees' Brief in Support at 2-4. Appellee Thru Limited Liability Company is the parent company of the debtor as well as the sole shareholder of all the debtor's stock. Transcript of Proceedings Held on June 27, 2017 at 27 (Record on Appeal, Volume 12 at 002525). Appellee Lee Harrison is the chief executive officer of the debtor and also serves as a director on its board. *Id*. at 26. Appellees Lee Harrison, Eliza McCoy and Roderic Holliday-Smith are all investors in Thru Limited Liability Company who joined together to make a pre-petition loan to the debtor in exchange for a lien on all of the debtor's assets. Transcript of Deposition of Lee Harrison dated June 21, 2017 at 120-27 (Record on Appeal, Volume 11 at 002364) (docket entry 6-11). The appellant, Dropbox Inc., ("Dropbox") is a company which provides online file management and collaboration services to businesses and consumers. Brief of Appellant at 7.

The origin of this bankruptcy case relates back to a trademark dispute between the appellant and the debtor over the usage of the mark "dropbox" ("the mark.") After the United States Patent and Trademark Office issued a trademark registration to the appellant for the use of the mark, the debtor filed a petition for cancellation.

- 3 -

Appellees' Brief at 5 (docket entry 17). In response to this petition, the appellant brought suit against the debtor in the United States District Court for the Northern District of California. *Id*. at 6. There, the appellant sought to have the court issue a declaratory judgment stating that the appellant's use of the mark did not infringe upon the rights of the debtor, and that the appellant's rights in the mark were superior to those of the debtor. *Id*. When the case was sufficiently far along, the appellant filed a motion for summary judgment, which the court granted. *Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2016 WL 669042, at *5 (N.D. Cal. Nov. 15, 2016) (holding that the debtor's counterclaims were barred by laches and granting summary judgment in favor of appellant on those claims); *Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2016 WL 7116717 at *7 (N.D. Cal. Dec. 7, 2016) (holding that appellant had senior rights to the mark, and granting summary judgment, in favor of appellant).

Following this victory on summary judgment, the appellant moved for attorney's fees under the Lanham Act. *Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2017 WL 914273, at *1 (N.D. Cal. Mar. 8, 2017). Specifically, the appellant argued that the debtor's bad faith conduct both before and during the litigation made the case so exceptional as to authorize the court to grant reasonable attorney's fees to the appellant. *Id*. The court agreed, finding that the debtor engaged in bad faith conduct when the debtor's chief executive officer, Lee Harrison, conceded in

deposition testimony that Thru's answers to interrogatories were false, and when the appellees filed a frivolous motion to dismiss. *Id*. at \*2-\*4. As a result, the court awarded the appellant $2,297,432.09 for attorneys' fees and costs. *Id*. at \*7; Brief of Appellant at 9.

While the debtor obviously hoped to avoid this result, it appears that it had planned for this worst case scenario. *See* Presentation for February 15, 2017 Board Meeting (Record on Appeal, Volume 10 at 2101) (docket entry 6-10); Email Exchange between Rick Holliday-Smith and Mike McCoy 2/18/2017 (THRU000369) (Record on Appeal, Volume 10 at 2129) (docket entry 6-10) ("I have been looking at how to survive the worst scenario . . . I have been involved with C11 before and generally understand it."); Email Exchange between Rick Holliday-Smith and Lee Harrison 2/19/2017 (THRU000132) (Record on Appeal, Volume 10 at 2127) (docket entry 6-10). In fact, before the California district court granted the motion for attorney's fees, the debtor received a pre-petition loan of $615,000.00 from appellees Harrison, McCoy, and Holliday-Smith in exchange for a lien on all of the debtor's assets. Promissory Note at 1-3 (Record on Appeal, Volume 10 at 2220) (Docket 6-10); Security Agreement at 1-17 (Record on Appeal, Volume 10 at 2227) (docket entry 6-10). In addition to the $615,000 given on February 22, these three appellees loaned an additional $100,000 on March 16, and an additional $150,000 on March 20, all secured by the same property as the original loan. Second

Supplement to the Security Agreement at 1 (Record on Appeal, Volume 10 at 002225) (docket entry 6-10).

Despite these loans, however, the debtor was unable to pay the 2.3 million dollar award or to obtain a supersedeas bond to prevent the appellant from collecting the award while the debtor appealed the California district court's judgment. Transcript of Proceedings Held on June 27, 2017 at 54 (Record on Appeal, Volume 12 at 002552) (demonstrating that the debtor attempted to obtain a supersedeas bond from both Hartford and State Farm, who required Thru post the full $2.3 million amount, which the debtor was unable to do). Consequently on March 22, 2017, the day the 2.3 million dollar award became final, the debtor filed for Chapter 11 bankruptcy. *See* Brief of Appellant at 12; Non-individual Chapter 11 Voluntary Petition at 1-4 (Record on Appeal, Volume 2 at 000098) (docket entry 6-2).

Two weeks later, on April 6, the debtor filed its disclosure statement and first version of its Chapter 11 plan. Docket Sheet of Bankruptcy Court at 7 (Record on Appeal, Volume 1 at 000082) (docket entry 6-1); Disclosure Statement at 1 (Record on Appeal, Volume 2 at 000180) (docket entry 6-2); Chapter 11 Plan of Reorganization at 1 (Record on Appeal, Volume 2 at 000233) (docket entry 6-2). In relevant part, the first version of the debtor's Chapter 11 plan provided that there would be seven classes of creditors with the appellant listed in class six by itself; that the appellant would be paid in monthly installments over an uncertain period of

time; and that all payments made during the pendency of the debtor's appeal of the fee award would be deposited into an escrow account. Chapter 11 Plan of Reorganization at 11-13. Both the disclosure statement and plan also made reference to post-petition financing that would be obtained from Harrison, Holliday-Smith, and McCoy as supplements to the financing these appellees had previously provided. Disclosure Statement at 3; Chapter 11 Plan of Reorganization at 4-6. On April 18, the debtor moved for entry of an order authorizing the debtor to obtain this post-petition financing. Docket Sheet of Bankruptcy Court at 8 (Record on Appeal, Volume 1 at 000083).

Shortly thereafter, the appellant filed objections to the debtor's disclosure statement, its proposed Chapter 11 plan, and its motion to obtain post-petition financing. *Id*. at 9; Objection to Disclosure Statement at 1 (Record on Appeal, Volume 3 at 000300) (docket entry 6-3). The appellant's objections argued that the plan was not filed in good faith, that it was not feasible, that it impermissibly gerrymandered the classification of creditors, and that the plan was not fair and equitable. Objection to Disclosure Statement at 5-13. The appellant also argued that the debtor's disclosure statement should not be approved because it lacked sufficient information to allow creditors to make an informed decision on how to vote on the plan. *Id*. at 13. Specifically, the appellant pointed out that the disclosure statement failed to disclose the debtor's financial condition, any possible causes of

action the debtor might have against its executives, or over how long a period the debtor proposed to repay the appellant.  *Id*. at 14-20.

The day after the appellant filed these objections, the appellant also filed a motion to appoint a trustee, asserting that since the debtor had filed for bankruptcy in bad faith a trustee was warranted.  Motion to Appoint Trustee at 5-9 (Record on Appeal, Volume 3 at 000427) (docket entry 6-3).  The appellant also filed a motion to convert the case from Chapter 11 to Chapter 7 for the same reasons.  Motion to Convert Case from Chapter 11 to 7 at 8 (Record on Appeal, Volume 4 at 000549) (docket entry 6-4).

In response to all of the appellant's filings, the debtor filed its amended disclosure statement and amended Chapter 11 plan on May 11, 2017.  Docket Sheet of Bankruptcy Court at 10 (Record on Appeal, Volume 1 at 000085).  As part of this amended plan, the debtor removed the second class of creditors and all provisions relating to the post-petition financing objected to by the appellant.  *See generally* Amended Chapter 11 Plan of Reorganization (Record on Appeal, Volume 4 at 000754) (docket entry 6-4).  To counter the appellant's objections to its original disclosure statement, the debtor also included more information about possible causes of action, its financial condition, how liquidation would affect the debtor's creditors, and how much time it would retake to fully repay the appellant.  *Id*. at 12, 15; Amended Disclosure Statement at appendix 2, 3, 4 (Record on Appeal, Volume 4

at 000747) (docket entry 6-4). After the amended disclosure statement and plan were filed, the bankruptcy court issued an order approving the disclosure statement, thereby allowing the creditors to vote on the plan. Order Approving Disclosure Statement and Setting Hearing on Confirmation of Plan at 2 (Record on Appeal, Volume 5 at 000884) (docket entry 6-5). Among other things, this order provided that all ballots for accepting or rejecting, and all objections to the confirmation of the plan, had to be received by June 15, 2017. *Id*. at 2.

While the debate surrounding the plan continued, the appellant and the debtor also became involved in a discovery dispute. In response to the debtor's discovery requests seeking all discussions and communications related to the debtor, the trademark litigation, and the 2.3 million dollar award, the appellant produced no documents. Transcript of Proceedings Held on June 16, 2017 at 5 (Record on Appeal, Volume 11 at 002460) (docket entry 6-11). The appellant claimed it could not produce documents responsive to these requests because the requests were unduly burdensome or they sought privileged material. *Id*. at 14-16. The bankruptcy court thus ordered a hearing on the discovery dispute to take place on June 16, 2017. Order Regarding Request for Expedited Hearing at 1 (Record on Appeal, Volume 6 at 0001300) (docket entry 6-6). As a result of this hearing, the parties were able to resolve their discovery dispute. Transcript of Proceedings Held on June 16, 2017 at 25. So long as counsel for the appellant admitted on the record that all matters

related to the debtor were being handled by in-house counsel, such that attorney client privilege applied to shield all such matters from discovery, the debtor agreed to withdraw its motion. *Id*. at 26-27.

With the deadline for receiving ballots fast approaching, the debtor modified its plan once again on June 5, 2017. *See* Amended Chapter 11 Plan of Reorganization (As Modified) at 1 (Record on Appeal, Volume 6 at 001112) (docket entry 6-6). Additionally, in compliance with the deadline for objections set by the bankruptcy court's order, the appellant filed its objection to confirmation of the plan on June 15. Objection to Confirmation of Plan at 1 (Record on Appeal, Volume 7 at 001302) (docket entry 6-7). Arguments raised in these objections were similar to the appellant's previous objections, claiming that the plan was not proposed in good faith, that it was not feasible, that it discriminated unfairly against the appellant, that it impermissibly gerrymandered creditor classes, and that it was not fair and equitable. *Id*. at 1-3.

Ultimately, on June 22, the debtor submitted a final modified version of its plan. Amended Chapter 11 Plan of Reorganization (As Modified) at 1 (Record on Appeal, Volume 8 at 001528) (docket entry 6-8). This version subordinated the right of repayment of the debtor's secured creditors to the appellant, requiring that the debtor's 1 million dollar exit facility loan be *pari passu* in right of repayment to the appellant's 2.3 million dollar fee award. *Id*. at 15. The final version also removed

all provisions of the plan requiring that all payments to the appellant be put in escrow while the appeal of the 2.3 million dollar award was before the Ninth Circuit. Redline of Amended Plan (as Modified) at 13 (Record on Appeal, Volume 8 at 001581) (docket entry 6-8).

Also on June 22, the balloting agent for the debtor's plan submitted the voting results to the court. Chapter 11 Ballot Summary at 1-4 (Record on Appeal, Volume 7 at 001525) (docket entry 6-7). The results showed that all creditors except the appellant voted to accept the plan. *Id*. at 4. Both parties were then given an opportunity to convince the court of their positions at the confirmation hearing on June 27, 2017. At this hearing, the debtor presented the testimony of Lee Harrison, who discussed the debtor's business, whether the debtor was a competitor of the appellant, as well as Harrison's conduct in the California trademark litigation. Transcript of Proceedings Held on June 27, 2017 at 25-106 (Record on Appeal, Volume 12 at 002523). The appellant objected to the debtor's questions regarding Harrison's behavior in the trademark litigation, arguing that the issue of Harrison's bad faith conduct could not be re-litigated in bankruptcy court since it was *res judicata*. *Id*. at 41-42. The bankruptcy court overruled the appellant's objections, finding that "the good faith of the debtor is very much being challenged in a different context now, Bankruptcy 1129(a)(3)." *Id*. at 42.

During this hearing, the appellant also sought to introduce the testimony of Kevin Spark, the in-house legal counsel at Dropbox, regarding his personal reasons for voting against the plan. *Id*. at 232-238. Before Spark could take the stand, however, the debtor objected to his testimony. *Id*. The debtor pointed out that during their discovery dispute, the appellant admitted that it could produce no documents in response to the debtor's discovery requests because all such documents were shielded by attorney-client privilege, since all matters related to Thru were handled by in-house counsel. *Id*. at 233. The debtor then argued that it would be inequitable to allow Spark to testify as to his personal reasons for voting for the plan, since these would be business reasons that were not protected by attorney-client privilege, and thus should have been given to the debtor in response to its discovery requests. *Id*. The appellant's reponse was to claim that Spark's reasons were not business related, and that his testimony would only show his legal reasons for voting against the plan. *Id*. at 243. Ultimately, the bankruptcy judge agreed with the debtor, noting "I've never seen such circumvention of attorney-client [privilege] as this." Transcript of Proceedings Held on June 27, 2017 at 247 (Record on Appeal, Volume 13 at 002745) (docket entry 6-13).

Due to time constraints, the parties were unable to conclude their hearing on June 27, prompting the bankruptcy court to continue the hearing to July 5. *Id*. at 261-64. At the July 5 hearing, the appellant presented testimony from expert witness

Steven List, who testified as the effectiveness and possibility of the plan succeeding. Transcript of Proceedings Held on July 5, 2017 at 4-55 (Record on Appeal, Volume 13 at 002805) (docket entry 6-13). Shortly after this hearing, on July 10, the bankruptcy court issued an order confirming the debtor's amended Chapter 11 plan, as well as an order denying the appellant's motions to appoint a trustee or convert the case to Chapter 7. Order Confirming Chapter 11 Plan (Record on Appeal, Volume 1 at 000013) (docket entry 6-1); Order Denying Motion to Appoint Trustee (Record on Appeal, Volume 1 at 000044) (docket entry 6-1).

The appellant then filed appeals of both the bankruptcy court's order confirming the plan and its order denying the appellant's motion to appoint a Chapter 11 trustee or convert the case to Chapter 7. Notice of Appeal of Findings of Fact, Conclusions of Law, and Order Confirming Amended Chapter 11 Plan of Reorganization ("Confirmation Order") at 1 (Record on Appeal, Volume 1 at 000001) (docket entry 6-1); Notice of Appeal of Order Denying Motion at 1 (Record on Appeal, Volume 1 at 000004). On July 24, 2017 the bankruptcy clerk transmitted the appeal to this court. Notice of Transmittal (docket entry 1). This court ordered the consolidation of the appellant's appeals on July 26, 2017. Order Consolidating Cases at 2 (docket entry 2). The appellees then moved to dismiss the appellant's consolidated appeals on December 18, 2017. Motion to Dismiss Appellant's Consolidated Appeals for Equitable Mootness (docket entry 19).

At the same time the bankruptcy case was proceeding, the appellant and the debtor continued battling over the 2.3 million dollar fee award by way of Thru's appeal to the Ninth Circuit. *Dropbox, Inc. v. Thru Inc.*, 728 F. App'x 717, 718 (9th Cir. Apr. 25, 2018). Because the debtor's appeal was pending while its Chapter 11 plan was before the bankruptcy court, the bankruptcy court was unable to incorporate the Ninth Circuit's determination into its decision. Nevertheless, during the pendency of the bankruptcy appeal before this court, the Ninth Circuit issued its opinion on the appeal. *Id*. at 720. In the opinion, the Ninth Circuit affirmed all of the findings of the district court, determining that the appellant had senior rights in the mark, that the district court did not abuse its discretion in finding that laches barred the debtor's counterclaims, and that the district court did not abuse its discretion in granting the 2.3 million dollar fee award. *Id*. at 719-20. For this reason, although the bankruptcy court may have considered the possibility that the 2.3 million dollar fee award might be reversed on appeal, this court cannot.

B. <u>The Bankruptcy Court's Order</u>

The bankruptcy court's order confirming the amended Chapter 11 plan is quite comprehensive, covering a range of issues, some pertinent to the instant appeal and some not.

Before discussing the appellant's objections to the confirmation of the plan, the bankruptcy court first addressed a series of preliminary matters. In particular, the bankruptcy court determined that:

> each of the release, exculpation and injunction provisions set forth in Article IX of the [p]lan is (a) within the jurisdiction of the Bankruptcy Court under 28 U.S.C. §§ 1334(a), 1334(b), and 1334(d); (b) essential to the implementation of the [p]lan; (c) warranted by the circumstances of the case; (d) fair, equitable, and in the best interests of the [d]ebtor [Thru] and its estate and creditors; (e) important to the overall objectives of the [p]lan to finally resolve all [c]laims among or against the key parties in interest in the chapter 11 case with respect to the [d]ebtor; and (f) consistent with §§ 105, 1123, and 1129, and other applicable provisions of the Bankruptcy Code.

Confirmation Order at 4-5.

The bankruptcy court began its discussion of the appellant's objections by considering the appellant's claim that the appellees' plan impermissibly gerrymandered classes of creditors in violation of sections 1122[2] and 1129(a)(1)[3] of the Bankruptcy Code. *Id*. at 5. The bankruptcy court concluded that while the appellant, a class six creditor, is similarly situated to all the unsecured creditors in class five, that did not mean the plan violated § 1122. *Id*. at 6. The bankruptcy

---

[2]     11 U.S.C. § 1122 provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

[3]     11 U.S.C. § 1129(a)(1) provides that a court shall confirm a plan only if "the plan complies with the applicable provisions of [the Bankruptcy Code]."

court noted that separate classification is permitted under § 1122 if there are "good business reasons" justifying the classification  *Id*. (quoting *In re Briscoe Enterprises, Limited II*, 994 F.2d 1160, 1167 (5th Cir.), *cert. denied,* 510 U.S. 992 (1993)).  The bankruptcy court then discussed how a creditor's non-creditor interests, such as putting a competitor out of business, can result in a separate classification of similarly situated claims.  *Id*. at 7.

After clarifying the facts surrounding the parties' ongoing trademark litigation and competing interests, the bankruptcy court analogized the separate classification of the appellant to that of the creditors in *In re Texas Star Refreshments* and *In re STC, Inc..  Id*. at 8-9.  In both *Texas Star Refreshments* and *STC, Inc.* the bankruptcy courts approved a separate classification of a creditor whose claim resulted from litigation with the debtor because the creditor was a competitor of the debtor and stood to gain more competitively by forcing the debtor out of business through liquidation.  *In re Texas Star Refreshments, LLC*, 494 B.R. 684, 696 (Bankr. N.D. Tex. 2013) (Jones, Bankr. J.); *In re STC, Inc.*, No. 14-41014, 2016 WL 3884799 at *4-*6 (Bankr. S.D. Ill. Apr. 7, 2016).  Thus, because the bankruptcy court determined that the evidence showed that the debtor and the appellant were competitors, and that the appellant could obtain clear title to the mark by putting the debtor out of business through liquidation, the bankruptcy court concluded that separate classification was justified. Confirmation Order at 9.  The bankruptcy court also noted, however, that the

ongoing trademark litigation between the appellant and the debtor was not the only

non-creditor interest that justified separate classification. *Id*. at 10.

The bankruptcy court then began to discuss the appellant's second objection,

that the plan did not comply with § 1129(a)(7)[4] of the Bankruptcy Code. *Id.* at 10.

Here, the bankruptcy court reviewed aspects of the liquidation analysis attached to

the debtor's disclosure statement. *Id*. at 11. In reviewing the liquidation analysis,

the bankruptcy court determined that if liquidation occurred, unsecured creditors

would receive only a 22 percent recovery of their claims. *Id.* Although the

bankruptcy court admitted that the debtor's liquidation analysis did not provide

estimates of the potential recoveries from claims that might be pursued in a

hypothetical chapter 7 case, it determined that "even a superficial review of those

potential claims strongly suggests that any recoverable value from those claims would

be negligible." *Id*. at 11. Ultimately, the bankruptcy court determined that the best

interests of the creditors would not be served if the debtor were liquidated under

---

[4]    11 U.S.C. § 1129(a)(7)(A) provides that in order for a chapter 11 plan
to be confirmed:
      With respect to each impaired class of claims or interests—
      (A) each holder of a claim or interest of such class—
             (i) has accepted the plan; or
             (ii) will receive or retain under the plan on account of such claim or
             interest property of a value, as of the effective date of the plan, that is
             not less than the amount that such holder would so receive or retain if
             the debtor were liquidated under chapter 7 of this title on such date[.]

Chapter 7, since the plan would provide for a greater recovery to creditors than liquidation. *Id*.

Next, the bankruptcy court discussed the appellant's third objection, that the plan did not comply with § 1129(a)(11)[5], since the plan was not feasible. Here, the bankruptcy court explained that in order for a plan to be feasible and satisfy § 1129(a)(11), the plan must offer a "reasonable probability of success." *Id*. at 12 (quoting *Financial Security Assurance, Inc. v. T-H New Orleans Limited Partnership (In re T-H New Orleans Limited Partnership)*, 116 F.3d 790, 801 (5th Cir. 1997)). The bankruptcy court then considered a number of factors that courts utilize to determine whether a plan is feasible, and demonstrated how those factors applied to the debtor's plan. Confirmation Order at 12. Specifically, the bankruptcy court determined that the debtor had a lean but adequate capital structure, a sufficient cash flow forecast, and a track record of growth and investor support. *Id*. at 12-13. The bankruptcy court concluded that these factors, taken together, demonstrated the plan was likely to succeed. *Id.* at 14.

---

[5]     11 U.S.C. § 1129(a)(11) establishes that a plan may be confirmed only if:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

The bankruptcy court then considered the appellant's fourth objection, that the plan did not comply with § 1129(b)[6] because it was not fair and equitable with respect to the appellant's claim. *Id.* The bankruptcy court explained that § 1129(b), also known as the absolute priority rule, requires that a plan must provide unsecured creditors with "property of a value, as of the effective date of the plan, equal to the allowed amount of such claim." *Id*. at 14 (quoting 11 U.S.C. § 1129(b)(2)(B)(i)). Effectively, the bankruptcy court noted, § 1129(b) allowed an unsecured creditor to be paid over time so long as the debtor also paid interest on the amount. Confirmation Order at 14. The bankruptcy court cautioned, however, that the interest rate necessary or sufficient to satisfy the absolute priority rule is not contained within § 1129(b). *Id*.

From here, the bankruptcy court explained that the plan proposed to pay the appellant the 2.3 million dollar fee award in full in equal payments over a 10-year amortization schedule with interest set at the federal judgment rate of 1.22 percent. *Id*. at 15. The bankruptcy court then analyzed precedent regarding methods for calculating appropriate interest rates. *Id*. Specifically, the bankruptcy court looked

---

[6] 11 U.S.C. § 1129(b)(1) provides, in pertinent part, that:
[I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

at the Supreme Court's plurality decision in *Till v. SCS Credit Corporation*, where the

Supreme Court concluded that the appropriate method for calculating the proper

interest rate under a Chapter 13 plan required starting at the national prime rate of

interest charged to creditworthy commercial borrowers and adjusting the rate to

reflect the risk of nonpayment. *Id*. at 15-16; *Till v. SCS Credit Corporation*, 541 U.S.

465, 479-80 (2004). After discussing *Till*, however, the bankruptcy court observed

that the Fifth Circuit has emphasized the limited precedential value of *Till,* and that

the import of *Till* to Chapter 11 cases was a footnote which provides that "when

picking a cram down rate in a Chapter 11 case, it might make sense to ask what rate

an efficient market would produce." Confirmation Order at 17 (citing *Till,* 541 U.S.

at 476 n. 14). In applying this footnote, the bankruptcy court explained that

precedent from the Northern District of Texas establishes that the correct rate of

return for § 1129(b)(2) "should generally be the rate that the market would require a

debtor to pay for financing the amount of the creditor's claim. . . ." Confirmation

Order at 17.

After a lengthy explanation as to why using the market rate may be a good

starting point for determining the appropriate interest rate under § 1129(b)(2), the

bankruptcy court denied any application of this rule to the debtor's plan. *Id*. The

bankruptcy court noted that it had "no real evidence . . . of what the market rate

might be." *Id*. Despite this, the bankruptcy court concluded that the federal

judgment rate of 1.22 percent was fair and equitable, because the federal judgment rate was an objective standard and it would provide the appellant with precisely the amount it would receive outside the bankruptcy process. *Id*. at 18-19.

Finally, the bankruptcy court considered the appellant's last objection that the plan unfairly discriminated against the appellant. Rather than addressing this objection in its own words, the bankruptcy court adopted all the arguments in the debtor's trial brief. *Id*. at 19.

After resolving the appellant's objections, the bankruptcy court proceeded to explain how the requirements of the bankruptcy code were either satisfied by the debtor's plan or inapplicable. *Id*. at 19-25. In particular, after examining the totality of the circumstances surrounding the formulation of the plan, the bankruptcy court concluded that the debtor filed its Chapter 11 case, and plan, in good faith. *Id*. at 21. The court determined that both the Chapter 11 case and plan were made with "legitimate and honest purposes including to (i) preserve the [d]ebtor's business for existing stakeholders, including creditors, employees, and owners, and (ii) maximize the recovery to [c]reditors under the circumstances of this case." *Id*.

## C. The Parties' Contentions on Appeal

The appellant asks this court to either reverse the bankruptcy court's confirmation order and appoint a Chapter 11 trustee, or reverse the order with instructions to take testimony from the appellant's witness who was not allowed to

testify.  Brief of Appellant at 59.  The appellant provides nine primary contentions in support of its requested relief.  The appellant also raises, but does not brief, two additional contentions.

First, the appellant maintains that the bankruptcy court erred in concluding that the Chapter 11 case, and plan, were filed in good faith.  *Id*. at 19-28.  Relatedly, the appellant also avers that the bankruptcy court never addressed any of its previous arguments regarding bad faith in the bankruptcy court's confirmation order.  *Id*. at 18.  Specifically, the appellant contends that the debtor filed the case in bad faith because the case was merely a two party dispute, which was filed to obtain a litigation advantage by using bankruptcy as a means to leverage settlement and to avoid posting a supersedeas bond while the parties' trademark dispute was on appeal.  *Id*. at 21-23.  The appellant argues that the Chapter 11 plan was filed in bad faith because it was filed in response to an adverse judgment and the plan itself is not feasible.  *Id*. at 24-25.  The appellant further asserts that the pre-petition loan executed between the debtor and appellees McCoy, Harrison, and Holliday-Smith was actually a fraudulent transfer, further evidencing the bad faith of the plan.  *Id*. at 26-27.

Second, the appellant maintains that the bankruptcy court erred in finding that the plan was feasible.  *Id*. at 28-37.  The appellant argues that the plan is not feasible due to the inadequacies of the debtor's earning power and capital structure,

and because current economic conditions and the debtor's management prohibit confirmation of the plan. *Id*. at 29-37.

Third, the appellant insists that the bankruptcy court erred in finding that the plan was fair and equitable. *Id*. at 37. The appellant asserts that the plan does not provide a high enough interest rate to ensure that unsecured creditors receive the present value of their claims. *Id*. The appellant also contends that the bankruptcy court should have considered its witness's testimony that the market rate would require interest in the 20 to 30 percent range. *Id*. at 39.

Fourth, the appellant asserts that the bankruptcy court erred in finding that the plan did not impermissibly gerrymander classes of creditors. *Id*. at 41. The appellant asserts that the debtor only justified separately classifying the appellant by arguing that the two parties were competitors. *Id*. at 44. The appellant avers that there is no evidence which shows that they are competitors, and that even if they were, there is no evidence showing that the appellant voted for competitive reasons. *Id*. at 44-45.

Fifth, the appellant argues that the bankruptcy court erred in finding that the plan did not unfairly discriminate against any class of creditors. *Id*. at 45. The appellant first asserts that the plan discriminates in favor of the creditors in class three, the pre-petition lenders McCoy, Harrison, and Holliday-Smith. *Id*. at 47. Specifically, the appellant contends that originally the pre-petition lenders had not

correctly perfected their lien and that the plan discriminates in their favor by allowing them to perfect their lien through the plan. *Id*. The appellant then asserts that the plan unfairly discriminates in favor of the other unsecured creditors in class five by paying off these creditors' claims over a shorter period of time than the appellant's claim. *Id*. at 49-50.

Sixth, the appellant contends that the bankruptcy court erred in finding that the plan did not contain any impermissible third-party releases. *Id*. at 50. In particular, the appellant maintains that because the exculpation and release provisions in the plan are broad enough to include Thru Limited Liability Company and the debtor's officers and directors, the plan runs afoul of Fifth Circuit precedent foreclosing non-consensual non-debtor releases and permanent injunctions. *Id*. at 52.

Seventh, the appellant asserts that the bankruptcy court erred in finding that the plan was in the best interest of creditors. *Id*. The appellant asserts that the debtor did not meet its burden of proving that creditors would receive more under the plan than they would under Chapter 7 liquidation. *Id*. at 53.

Eighth, the appellant claims that the bankruptcy court erred by declining to appoint a Chapter 11 trustee. *Id*. at 54. Specifically, the appellant argues that because the debtor filed its bankruptcy case and plan in bad faith, the bankruptcy court should have appointed a chapter 11 trustee. *Id*. at 55. Relatedly, the appellant again mentions that the bankruptcy court failed to address the appellant's arguments

of bad faith anywhere in the bankruptcy court's confirmation order or order denying appointment of a chapter 11 trustee. *Id*. at 55-56.

Ninth, the appellant contends that the bankruptcy court erred when it excluded testimony from the appellant's witness and in-house counsel, Kevin Spark. *Id*. at 56. The appellant claims that the bankruptcy court applied the wrong legal standards when determining whether to admit Spark's testimony, and thus abused its discretion. *Id*. at 58.

Additionally, though not briefed, the appellant mentions two additional issues. First, the appellant argues that the bankruptcy court failed to fulfill its obligations because it did not provide a sufficient explanation of its ruling to facilitate adequate appellate review. *Id*. at 5. Consequently, the appellant asks this court to remand this case for elaboration. *Id*. Second, the appellant argues that the bankruptcy court erred by waiving the 14-day stay of Federal Rule of Bankruptcy Procedure 3020(e).[7] *Id*. at 6.

In their brief, the appellees address the appellant's contentions in turn. First, the appellees argue that the bankruptcy court correctly concluded that they had filed the case and plan in good faith because the debtor's business has been growing steadily, and because the debtor did not use the pendency of its bankruptcy to "stay,

---

[7]    Federal Rule of Bankruptcy Procedure 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

delay, or otherwise stall the forward progress" of the Ninth Circuit appeal. Appellees' Brief at 15-19. Relatedly, the appellees also contend that the appellant is the true party acting in bad faith, as it has used the bankruptcy case as an opportunity to gain an improper litigation advantage by driving the debtor out of business. *Id*. at 20.

Second, the appellees assert that the bankruptcy court correctly concluded that the plan was feasible because the debtor presented sufficient evidence on this point. *Id*. at 21-23.

Third, the appellees maintain that the court correctly concluded that the plan was fair and equitable. *Id*. at 24. Specifically, the appellees argue that the bankruptcy court was correct to reject the testimony of the appellant's witness, because this witness's testimony regarding the appropriate market rate of interest was unsubstantiated. *Id*. at 26. Furthermore, the appellees contend that the bankruptcy court was correct in determining that the federal judgment rate was an appropriate cramdown interest rate since it was based on an objective standard. *Id*. at 28.

Fourth, the appellees assert that the bankruptcy court correctly concluded that the plan does not unfairly discriminate against the appellant. *Id*. at 28. Specifically, the appellees contend that the appellant is not treated worse than the class three creditors under the plan, since the claims of class three creditors have been subordinated to the appellant's claim. *Id*. at 30. Furthermore, the appellees contend that the appellant is also not treated worse than the class five creditors under the

plan because a difference in the time of repayment does not rise to the level of unfair discrimination. *Id*. at 32.

Fifth, the appellees argue that the bankruptcy court correctly concluded that the plan did not improperly gerrymander classes of creditors. *Id*. The appellees maintain that the parties are competitors in the enterprise file sync and share market; and, that they both have competing interests in the mark. *Id.* at 33.

Sixth, the appellees maintain that the bankruptcy court correctly concluded that the release provisions within the plan are permissible. *Id*. at 36. The appellees contend first that, as a matter of law, because the appellant did not object to the exculpatory and injunction provisions in its objection to plan confirmation, the appellant cannot raise these arguments on appeal to the district court. *Id*. at 36-37. Additionally, the appellees argue that the exculpatory and injunction provisions were consensual and that these provisions are distinguishable from those struck down by the Fifth Circuit. See *id*. at 38-40.

Seventh, the appellees aver that the bankruptcy court correctly concluded that the plan satisfies the best interest of the creditors test because the appellant cannot pinpoint error in the record or the bankruptcy court's consideration of evidence. *Id.* at 42.

Eighth, the appellees argue that remanding the case for further elaboration is unnecessary. *Id*. at 45. The appellees contend that the bankruptcy court's findings

are sufficient because they give the reviewing court a clear understanding of the basis for the decision. *Id*.

Ninth, the appellees maintain that the bankruptcy court correctly denied the appellant's motion to appoint a trustee. *Id*. at 46. Specifically, the appellees argue that because evidence demonstrates that the bankruptcy case and plan were filed in good faith, and that the plan is confirmable, there was no cause to appoint a Chapter 11 trustee or convert the case to Chapter 7. *Id*. at 48-50.

Tenth, and finally, the appellees assert that this court should affirm the bankruptcy court's decision to exclude the appellant's witness testimony because the bankruptcy court's findings are not clearly erroneous. See *id*. at 51-56.

### D. Motion to Dismiss for Equitable Mootness

The appellees also filed a motion to dismiss the appellant's appeals for equitable mootness. *See* Motion to Dismiss Appellant's Consolidated Appeals for Equitable Mootness (docket entry 19). The appellees filed a brief in support of the motion, in which they raise a number of arguments to support dismissal of Dropbox's appeals. *See* Appellees' Brief in Support.

Before raising these arguments, however, the appellees discussed events that have occurred since this appeal was taken. *Id*. at 9. Specifically, the appellees explained, as a result of the plan becoming effective: (1) all executory contracts and unexpired leases have been assumed by the debtor, including approximately 180

customer contracts, (2) the debtor has received the exit facility loan of $1,000,000.00, which was used on operational expenses and initial distributions under the plan, (3) monthly distributions to class five creditors totaling $41,672.30 have been made, (4) monthly distributions to the appellant totaling $101,580.30 have been made, and (5) distributions were made under the plan for professional services rendered to the debtor. *Id*. at 10-11. Additionally, the appellees explained, as a result of the plan the debtor has consummated multiple post-confirmation transactions, some with third parties not before the court. *Id*. at 11. Specifically, the appellees noted that the debtor has entered into two large scale agreements. *Id*. at 12. First, the debtor has entered into a two-year $1.2 million dollar service agreement with Rackspace, in which Rackspace has agreed replace the debtor's old equipment with new hardware. *Id*. at 12. Second, the debtor has entered into a strategic partnership agreement with MuleSoft, Inc. *Id*. at 13-14.

After discussing these events that have transpired since the plan's confirmation, the appellees laid out the foundation for a discussion of equitable mootness. *Id*. 15-16. The appellees explained that there are three factors that courts generally examine when determining whether to dismiss an appeal for equitable mootness. *Id*. at 16. They then set forth how each factor is satisfied in this case. See *id*. at 17-25. First, the appellees explain the first factor is satisfied as the appellant did not secure a stay of the effectiveness of the confirmation pending appeal. *Id*. at 17.

Second, the appellees explain that the second factor is satisfied since the plan has been substantially consummated. See *id*. at 18-21. Finally, the appellees explain that the third factor is satisfied in this case since the relief requested by the appeal would "require nothing short of the evisceration and wholesale unraveling of the entire substantially consummated Plan and the multitude of transactions entered into between the Debtor and its customers and other third parties since confirmation of the Plan." *Id*. at 24.

In its response brief, the appellant contends that there are more than three factors courts consider in determining whether an appeal is equitably moot. Response and Objection at 15-16 (docket entry 24). The appellant admits that the plan is substantially consummated and that it did not obtain a stay of the plan pending appeal. *Id*. at 17. Nevertheless, the appellant argues that the court should give no weight to the fact that it did not obtain a stay, since it did not try to seek one. *Id*.

The appellant then contends that the court should consider its appeal, since the appellees only sought dismissal of the entire appeal in their brief, and did not scrutinize each of the appellant's claims as required by precedent. *Id*. at 18. Furthermore, the appellant argues that since partial relief is available for its claims, such claims are not equitably moot. *Id*. at 21.

The appellant next argues that any adverse consequences to insiders, such as appellees McCoy, Harrison, or Holliday-Smith would not be sufficient to justify dismissal for equitable mootness. *Id*. at 23. The appellant then addresses whether reversing the bankruptcy court's confirmation order would affect the rights or third parties and success of the plan, concluding that because this court could fashion whatever relief is practicable, few or no adverse consequences would result. *Id*. at 25-26.

The appellant maintains that because the bankruptcy court failed to discuss its contentions that the plan and case were filed in bad faith, the bankruptcy court's decision regarding good faith was arbitrary, which favors appellate review. *Id*. at 33-34. Finally, the appellant argues that general principles of equity support this court's appellate review. *Id*. at 36.

II. ANALYSIS

A. Legal Principles

1. *Equitable Mootness*

The doctrine of equitable mootness "has evolved in bankruptcy appeals to constrain appellate review, and potential reversal, of orders confirming reorganization plans." *Bank of New York Trust Company. v. Official Unsecured Creditors' Committee (In re The Pacific Lumber Company)*, 584 F.3d 229, 240 (5th Cir. 2009). It "authorizes an appellate court to decline review of an otherwise viable appeal of a Chapter 11

reorganization plan, but only when the reorganization has progressed too far for the requested relief practicably to be granted." *Eagle Domestic Drilling Operations, LLC v. Blast Energy Services, Inc. (In re Blast Energy Services, Inc.)*, 593 F.3d 418, 424 (5th Cir. 2010)). The doctrine is "firmly rooted in Fifth Circuit jurisprudence, as [the] court attempts to 'strik[e] the proper balance between the equitable considerations of finality and good faith reliance on a judgment and competing interests that underlie the right of a party to seek review of a bankruptcy order adversely affecting him.'" *In re The Pacific Lumber Company*, 584 F.3d at 240 (quoting *In re Manges*, 29 F.3d 1034, 1039 (5th Cir. 1994), *cert. denied*, 513 U.S. 1152 (1995)).

In determining whether an appeal should be dismissed for equitable mootness, courts in the Fifth Circuit consider three factors: "(1) whether a stay was obtained, (2) whether the plan has been 'substantially consummated,' and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re The Pacific Lumber Company*, 584 F.3d at 240. There is no set weight given to the respective prongs. *In re Blast Energy Services, Inc.*, 493 F.3d at 424. If no stay has been obtained and the plan has been substantially consummated, however, "the more likely the third prong indicates equitable mootness." *Id*. In addition to the three factors listed above, in certain cases courts other considerations such as the degree of prejudice to third parties and the arbitrariness of the ruling being appealed may be pertinent. *Id*. at n.4.

Courts should "apply equitable mootness with a scalpel rather than an axe." *In re The Pacific Lumber Company*, 584 F.3d at 240. In fact, "[t]his [c]ircuit has taken a narrow view of equitable mootness, particularly where pleaded against a secured creditor." *Wells Fargo Bank National Association v. Texas Grand Prairie Hotel Realty, L.L.C. (In re Texas Grand Prairie Hotel Realty, L.L.C.)*, 710 F.3d 324, 328 (5th Cir. 2013). So long as partial relief can be granted, a court may hear an appeal, even if granting full relief could adversely affect third parties or the success of the plan. *Id*. If the appeal succeeds the court "may fashion whatever relief is practicable." *In re The Pacific Lumber Company*, 584 F.3d at 241. Furthermore, "equitable mootness applies to specific claims, not entire appeals." *Id*. Thus, in evaluating whether to dismiss an appeal for equitable mootness, a court "cannot avoid its obligation to scrutinize each individual claim, testing the feasibility of granting the relief against its potential impact on the reorganization scheme as a whole." *Id*. (quoting *In re AOV Industries, Incorporated*, 792 F.2d 1140, 1148 (D.C. Cir. 1986)).

## 2. *Standard of Review*

According to established Fifth Circuit precedent, "reviewing courts – district and courts of appeals alike – must accept the findings of fact of the bankruptcy court unless the findings are clearly erroneous." *Coston v. Bank of Malvern (In re Coston)*, 987 F.2d 1096, 1098 (5th Cir. 1992); see also *Ronit Inc. v. Block Shim Development Company—Irving (In re Block Shim Development Company—Irving)*, 118 B.R. 450, 453

(N.D. Tex. 1990) (Fitzwater, J.) "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Holloway v. HECI Exploration Company Employees' Profit Sharing Plan*, 76 B.R. 563, 573 (N.D. Tex. 1987) (Fitzwater, J.) (citing *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 573 (1985)).

"Mixed questions of fact and law, and questions concerning the application of law to the facts, are reviewed *de novo.*" *Bass v. Denny (In re Bass)*, 171 F.3d 1016, 1021 (5th Cir. 1999). Similarly, a bankruptcy court's conclusions of law are reviewed *de novo*. *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1020 (5th Cir. 2010).

## B.  Application

In this bankruptcy appeal the appellees argue, and the appellant concedes, that the appellant did not obtain a stay of the plan pending appeal, and that the plan has been substantially consummated. *See* Appellees' Brief in Support at 17-21; Response and Objection at 17-18. This court will therefore not need to discuss the first two equitable mootness factors. Nor will this court accept the appellant's invitation to consider additional factors in determining whether an appeal is equitably moot. While the appellant is correct that the court in *In re Blast Energy Services, Inc.* provided in a footnote that other factors "may sometimes" be appropriate, the same court provided no guidance as to what circumstances require consideration of these

additional factors other than the statement that "principles of equity are generally relevant to the analysis." *In re Blast Energy Services, Incorporated*, 593 F.3d at 424 n.4. This court does not believe that departing from the Fifth Circuit's well-settled three factor test in determining equitable mootness is warranted in this case.[8] Therefore, to determine whether any of the appellant's claims are equitably moot, this court will only need to analyze whether the relief requested in such claims will adversely affect third parties or the success of the plan, or whether partial relief exists that may

---

[8]     Even if this court were to do so, the appellant's arguments on these factors are without merit. First, this court cannot conclude that the bankruptcy court's determination of good faith was arbitrary. A cursory review of the record provides a rational connection between the facts and the bankruptcy court's determination that the debtor filed its case and plan in good faith to preserve its business and maximize recovery to creditors. Confirmation Order at 21. Thru quickly filed a plan to pay all creditors in full and it modified its plan multiple times to overcome the appellant's objections. See Redline of Amended Plan (as Modified) at 11-15. Additionally, the debtor did not use the bankruptcy case as tool to change the venue, or otherwise hinder, its appeal of the 2.3 million dollar fee award. Second, this court does not agree that general principles of equity support review of all of the appellant's claims. The appellant's argument that this court should exercise appellate review since equity will not tolerate a wrong without granting a remedy is unpersuasive. If a court could not dismiss an appeal as equitably moot without granting the appellant a remedy, then the doctrine of equitable mootness would serve no purpose. Furthermore, the appellant's argument that this court should exercise appellate review because the debtor has unclean hands is similarly unconvincing. This appeal also results from the appellant's inequitable conduct during discovery. *See* Transcript of Proceedings Held on June 27, 2017, at 247 (demonstrating that Dropbox's actions during discovery resulted in the bankruptcy judge exclaiming "I've just never seen such circumvention of attorney-client [privilege] as this."). Finally, this court disagrees with the appellant's contention that this court should exercise appellate review because a court of equity abhors forfeitures. The appellant may still appeal this court's opinion and the debtor and third parties would stand to forfeit more if the plan were reversed.

alleviate the effects on third parties or the plan's success. Only after determining

whether the specific claim survives the equitable mootness challenge will this court

address the merits of the claim on appeal.

1. *Bad Faith Filing of Bankruptcy Case*

The first claim the appellant raises in its appeal is that the debtor filed its

bankruptcy case in bad faith and therefore this court should reverse the confirmation

order and render a decision appointing a Chapter 11 trustee. *See* Brief of Appellant

at 19-24. If the appellant's contentions are correct, and the debtor actually filed its

plan in bad faith, that would require this court to reverse the bankruptcy court's

confirmation order and instruct the bankruptcy court to dismiss the Chapter 11 case.

See *Matter of Little Creek Development Company*, 779 F.2d 1068, 1071, 1072-73 (5th

Cir. 1986) (providing that lack of good faith permits dismissal for cause since "resort

to the protection of the bankruptcy laws is not proper [when a case is filed in bad

faith] because there is no going concern to preserve, there are no employees to

protect, and there is no hope of rehabilitation, except according to the debtor's

'terminal euphoria.'"); *In re Art Midwest, Inc.*, No. 04-91225-RFN-11, 2006 WL

306894 at *3 (Bankr. N.D. Tex. Jan. 5, 2006) (Nelms, Bankr. J.) (courts have an

"independent duty" to dismiss bankruptcy cases filed in bad faith *sua sponte*).

Alternatively, this court could at most reverse the confirmation order and instruct the

bankruptcy court to appoint a Chapter 11 trustee. *See* 11 U.S.C. § 1104(a) (allowing

appointment of trustee for cause, including fraud and dishonesty).

Regardless of whether the bankruptcy case is dismissed or a Chapter 11 trustee

is appointed on remand, the third equitable mootness factor points towards dismissal

of this claim. This is because reversing the confirmation order and providing the

requested relief would adversely affect third parties not before the court.[9]

If the entire plan were reversed, third party creditors would be adversely

affected by having to return the distributions they received pursuant to the plan. See

*Nationwide Mutual Insurance Co. v. Berryman Products, Inc. (In re Berryman Products,*

*Inc.)*, 159 F.3d 941, 946 (5th Cir. 1998). The appellant asserts that no adverse

effects would result, since the distributions given to third party unsecured creditors

have been small in amount. Response and Objection at 30-31. This court disagrees.

Although the $143,252.60 distributed to unsecured creditors pursuant to the plan

---

[9]      In discussing the adverse consequences the relief requested by the
appellant will have on third parties, this court does not consider the effects reversal
will have on insiders or bankruptcy professionals paid under the plan. Fifth Circuit
precedent establishes that adverse effects to insiders do not warrant dismissal for
equitable mootness. See *In re The Pacific Lumber Company*, 584 F.3d at 244 ("That
there might be adverse consequences to [insiders] is not only a natural result of any
ordinary appeal—one side goes away disappointed…"). Similarly, requiring
bankruptcy professionals to return payments received pursuant to a plan does not
warrant a dismissal on equitable mootness grounds. See *Hilal v. Williams (In re Hilal*,
534 F.3d 498, 500 (5th Cir. 2008) (concluding that an appeal seeking disgorgement
of fees paid to a bankruptcy professional under a confirmed plan was not equitably
moot because third parties would suffer no adverse effects).

may be a small amount, this does not establish that third party creditors would not be adversely affected if forced to return what they have received. In fact, the opposite seems true. Requiring these third party creditors to return their distributions would also require that the debtor bring adversary proceedings against these third parties. *See* Federal Rules of Bankruptcy Procedure 7001.[10]  Regardless of whether these adversary proceedings would affect third party creditors by costing them additional money or time, hailing these third parties into court to obtain repayment would adversely affect these parties by frustrating their pre-existing relationships with the debtor.  See *In re Berryman Products, Inc.*, 159 F.3d at 946 (finding that requiring the return of payments made pursuant to a plan would adversely affect third parties, in part, by frustrating creditor relations).

The appellant also asserts that partial relief could be granted to avoid requiring repayment altogether.  Response and Objection at 32.  Specifically, the appellant contends that since distributions made pursuant to the plan will need to be made under *any* confirmable plan, this court could grant partial relief and allow these distributions to be retained by affected creditors and treated as credits to the debtor under a new or modified plan.  *Id*.  This court disagrees.  Allowing creditors to retain

---

[10]    Federal Rule of Bankruptcy Procedure 7001 provides, in pertinent part, that "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 217, or Rule 6002" is an adversary proceeding.

their distributions would fail to restore the debtor and its creditors to the *status quo* prior to the confirmation order, when the debtor presumably still had control over the amounts distributed and its creditors did not. This result is exactly what the doctrine of equitable mootness was designed to avoid. See *In re Manges*, 29 F.3d at 1043; *Alberta Energy Partners v. Blast Energy Services, Inc.,* No. CIV.A. H-08-00750, 2008 WL 1858919, at *3 (S.D. Tex. Apr. 24, 2008) ("When it appears to a court that it would be nearly impossible to restore the estate or its claimants to [the] *status quo* as it existed prior to the confirmation order, a finding of equitable mootness is appropriate."). Such a proposal also flies in the face of the Fifth Circuit's *In re Berryman Products, Inc.* decision that upon reversal the debtor cannot forgo repayment from creditors. *In re Berryman Products, Inc.*, 159 F.3d at 946.

Additionally, reversal of the plan would adversely affect third parties by upsetting the expectation and reliance interests of third party customers and vendors who entered into post-petition contracts with the debtor. This is due to the fact that upon reversal of the plan, the post-petition contracts would be unwound. The appellant contends that there is no reason why reversal should impact these contracts, or result in their rescission, since prior to confirmation the debtor could have entered into these contracts pursuant to Bankruptcy Code sections 1107 and

1108.[11]  Response and Objection 27-30.  The appellant's argument misses the point,
however.  Equitable mootness requires that a court analyze the effect relief would
have on *third parties*, not the ability of a debtor to enter into contracts generally.
Here, evidence provided by the debtor establishes that many of the post-confirmation
contracts the debtor entered into with third parties were directly dependent upon the
debtor exiting Chapter 11 bankruptcy.  *See* Declaration of Lee Harrison at 9 (docket
entry 21) (contract with Rackspace dependent upon confirmation of the plan and
emergence from chapter 11); Transcript of Proceedings Held on June 27, 2017 at 65-
66.  Thus, if the debtor is forced back into bankruptcy upon reversal of its plan, it is
unlikely these third parties would want to enter into the same contractual
agreements.  This is especially the case for those third parties who are also unsecured
creditors of the debtor, since collecting these disbursements would require the debtor
bring adversary proceedings against them.  In short, in reversing the plan the third
party expectations could not reasonably be undone.  See *In re The Pacific Lumber
Company*, 584 F.3d at 251 (dismissing claim requiring reversal of entire confirmation
plan as equitably moot because "[t]hird-party expectations cannot reasonably be
undone.").

---

[11]     11 U.S.C. § 1107 provides "a debtor in possession shall have all the
rights . . . and powers . . . of a trustee serving in a case under this chapter." 11 U.S.C.
§ 1108 provides "Unless the court, on request of a party in interest and after notice
and hearing, orders otherwise, the trustee may operate the debtor's business."

It should also be noted that reversal of the entire confirmation order would jeopardize third parties not before the court due to the nature of the debtor's business. The debtor provides cloud-based virtual file systems to businesses, thereby allowing these businesses to share data. Transcript of Proceedings Held on June 27, 2017 at 28. To store data from these businesses, the debtor contracts with Rackspace, which provides the debtor with storage hardware and related software. Declaration of Lee Harrison at 8. Pursuant to the plan's confirmation, the debtor and Rackspace entered into a new contract to update and replace the debtor's old storage hardware and software. *Id*. at 9. If the plan were reversed and the debtor's contract with Rackspace were unwound, the debtor would need to revert to its old infrastructure. *Id*. This would adversely affect third parties who have entered into post-confirmation service contracts with the debtor that rely on the newer hardware and software for the rendition of the debtor's services. *Id*. Without the new hardware or software, the debtor would be unable to fulfill its obligations under these contracts, which would likely impact the business of these third party customers. *Id*.; *see also* Transcript of Proceedings Held on June 27, 2017 at 47-48.

Taken together, the preceding paragraphs demonstrate that the relief sought by the appellant's first claim would result in adverse effects to third parties not before this court that cannot be avoided through granting partial relief. Therefore, the third

equitable mootness factor is satisfied in favor of dismissal as to the appellant's first claim.  The appellant's first claim is thus dismissed as equitably moot.

## 2.  *Bad Faith Plan*

The appellant's second claim argues that the debtor filed its plan in bad faith to gain a litigation advantage in the ongoing trademark litigation.  *See* Brief of Appellant at 24-28.  A plan proposed in bad faith cannot be confirmed.  *See* 11 U.S.C. § 1129.[12]  Consequently, to remedy a plan filed in bad faith, this court would need to unwind the entire plan – no partial relief would be available.  As discussed in section (B)(1), reversal of the entire plan would result in adverse effects to third parties not before this court and would affect the success of the plan. Therefore, this court must dismiss the appellant's second claim as equitably moot.

## 3.  *Infeasible plan*

The appellant's third claim on appeal is that the plan is not feasible, due to the debtor's inadequate capital structure, inadequate earning power, and inept management.  S*ee* Brief of Appellant at 28-37.  In consequence, the appellant contends, this court must reverse the confirmation order and render a decision denying confirmation of the plan.  *Id*. at 37.  If a Chapter 11 plan is infeasible, the

---

[12]     Section 1129 provides, in pertinent part, that a court shall confirm a plan *only if* certain requirements are met, including that "[t]he plan has been proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).

plan cannot be confirmed. See *Save our Springs (S.O.S) Alliance, Inc. v. WSI (II)-COS, L.L.C. (In re Save our Springs (S.O.S.) Alliance, Inc.)*, 632 F.3d 168, 172 (5th Cir. 2011) ("To obtain confirmation of its reorganization plan, a debtor must show by a preponderance of the evidence that its plan is feasible…"). Thus, if the appellant's contentions are correct, this court would have no choice but to grant the appellant the full relief requested, reverse the confirmation order and unwind the plan. As discussed in section (B)(1), unwinding the entire plan would result in adverse effects to third parties not before this court and would affect the success of the plan, thereby satisfying the third equitable mootness factor in favor of dismissal. Therefore, the appellant's third claim is dismissed as equitably moot.

### 4. *Unfair and inequitable plan*

The appellant's fourth claim is that the plan violates the fair and equitable requirements of section 11 U.S.C. § 1129(b)(1). Brief of Appellant at 37-41. In order for a bankruptcy court to confirm a plan, all impaired classes must vote to accept the plan. *See* 11 U.S.C. § 1129(a)(8) (providing that confirmation requires that each class either accept the plan or be unimpaired). The appellant, an impaired class, voted against the plan, thereby requiring, under 11 U.S.C. § 1129(b)(1), that the plan -- to be confirmed -- be fair and equitable. To be fair and equitable, a plan must provide unsecured creditors with "property of a value, as of the effective date of the plan, equal to the allowed amount of such claim." 11 U.S.C. § 1129(b)(2)(B)(i).

Essentially, to be fair and equitable, the plan must provide the payment of interest at a sufficiently high rate.

The appellant objects that the interest rate of 1.22 percent (the federal judgment rate on the date of confirmation) is too low to satisfy the fair and equitable requirement of 11 U.S.C. § 1129(b)(1). Brief of Appellant, at 37-41. In contrast to the situation with appellant's previous claims, this court need not, on this claim, grant the full relief of unwinding the entirety of the plan. In fact, the Fifth Circuit has concluded on multiple occasions that objections to a plan's cramdown interest rate under 11 U.S.C. § 1129(b)(1) will survive an equitable mootness challenge because a court may grant partial relief that does not require undoing the entire plan. See *In re Texas Grand Prairie Hotel Realty, Limited Liability Company*, 710 F.3d at 328 ("This Court could grant partial relief . . . without disturbing the reorganization, by, for example, awarding a slightly higher § 1129(b) cramdown interest rate or granting a small money judgment."); see also *In re The Pacific Lumber Company*, 584 F.3d at 243 (concluding that a creditor's objection to the interest rate under § 1129(b)(1) survives an equitable mootness challenge). The appellees concede this point as well. Appellees' Reply Brief in Support of Motion to Dismiss at 6-7 (docket entry 28). Therefore, because this court can grant partial relief on this claim without undoing the plan in its entirety, the appellees' motion to dismiss the appellant's fourth claim is denied.

This court now turns to the merits of the appellant's fourth claim. As noted previously, a district court reviews the findings of facts of a bankruptcy court for clear error. *In re Coston*, 987 F.2d at 1098. The appellant asserts that because there is a dispute as to what the appellant is legally entitled to receive as cramdown interest under 11 U.S.C. § 1129(b)(2)(B)(i), this court should exercise the *de novo* standard of review. Brief of Appellant at 3. The appellant's contention is incorrect. The Fifth Circuit has determined that an appellate court should "review a bankruptcy court's entire cramdown-rate analysis only for clear error." *In re Texas Grand Prairie Hotel Realty, Limited Liability Company*, 710 F.3d at 331.

This court discerns no clear error in the bankruptcy court's cramdown rate analysis. In its confirmation order, the bankruptcy court correctly concluded that a plan providing that unsecured creditors will be paid in full over time can still be fair and equitable under 11 U.S.C. § 1129(b)(2)(B)(i) so long as the plan provides an appropriate rate of return or interest. Confirmation Order at 14. In discussing what interest rate would be appropriate, the court also correctly noted that § 1129(b) is silent, and that there were alternative approaches for determining the appropriate interest rate. *Id*. at 14-15. Specifically, the bankruptcy court noted that the United States Supreme Court's plurality decision in *Till* indicated that the appropriate interest rate could be determined by taking the "national prime rate of interest charged to creditworthy commercial borrowers, and then adjust[ing] that rate to

appropriately reflect the typically greater risk of nonpayment by debtors who have filed bankruptcy." *Id*. at 16 (citing *Till,* 541 U.S. at 479). The bankruptcy court also explained that *Till* provided, in a footnote, that a cramdown interest rate in a Chapter 11 case may be determined by asking "what rate an efficient market would produce." Confirmation Order at 17 (citing *Till*, 541 U.S. at 476 n.14).

After considering each alternative, the bankruptcy court explained that neither applied to the plan before it. Confirmation Order at 16-18. As for the first method, the prime interest approach, the bankruptcy court concluded that this approach is not controlling precedent in the Fifth Circuit, and courts have mainly applied this approach in situations that were factually similar to the dispute in *Till*. *Id*. at 16-17 (citing *In re Texas Grand Prairie Hotel Realty, Limited Liability Company* 710 F.3d at 331-32). As for the second method, the market rate approach, the bankruptcy court agreed that the cramdown rate should "generally be the rate that the market would require to pay for financing the amount of the creditor's claim." Confirmation Order at 17. Nevertheless, the bankruptcy court determined that it had no credible evidence as to what the market rate would be other than an unsubstantiated statement from Dropbox's witness that "the market might require a 20%-plus rate of return for a loan equivalent to DBI's plan treatment." *Id*.

Since the facts of Thru's plan were not similar to that of the debtor in *Till*, and because there was no credible evidence as to the market rate, the bankruptcy court

looked to precedent to determine that the plan's proposed interest of 1.22 percent (the federal judgment rate) was fair and equitable. *Id*. at 18. Specifically, the bankruptcy court examined the case of *In re Texas Star Refreshments, LLC.* In *In re Texas Star Refreshments*, *LLC*, a dissenting unsecured creditor who had obtained a state court judgment against the debtor appealed the cramdown interest of 5%, the state court judgment rate, provided under the debtor's plan. *In re Texas Star Refreshments, LLC*, 494 B.R. at 701-02. The judge in *In re Texas Star Refreshments, LLC*, determined that the state court judgment rate was fair and equitable because it satisfied the principles of the *Till* plurality decision – the judgment rate was an objective standard, set a rate that was consistent with the present value requirement, and it properly reflected the benefits to unsecured creditors. *Id*. Based on their similarities, the bankruptcy court concluded that the interest rate in the debtor's plan was also fair and equitable.

The appellant argues in its brief that the bankruptcy court erred by not calculating the interest rate correctly. Brief of Appellant at 37-39. The appellant avers that the bankruptcy court should have calculated the interest rate using the prime interest approach in *Till*, starting at the prime rate of 4.25 percent at confirmation and adjusting upwards. *Id*. at 38. Alternatively, the appellant asserts the bankruptcy court should have applied the market rate approach, as the

appellant's expert testimony was not unsubstantiated and provided a relevant market rate of 20 to 30 percent. *Id*. at 39.

Neither of these contentions provide this court with a definite and firm conviction that a mistake has been committed. The bankruptcy court was under no obligation to apply the prime rate approach advocated by the plurality in *Till.* See *In re Texas Grand Prairie Hotel Realty, Limited Liability Company*, 710 F.3d at 331 (explaining that the interest formula established by the plurality in *Till* is not controlling precedent). Furthermore, a close review of the testimony of the appellant's witness corroborates the bankruptcy court's determination that his estimate of the market rate was unsubstantiated. Transcript of Proceedings Held on July 5, 2017 at 18-19 ("I'm not even trying to put, you know, an exact number and say, look, this should be, you know, sixteen percent, or nine percent, or twenty-six percent, and you know, we can try to do a buildup to that . . .").

The appellant also contends the bankruptcy court erred in determining that the plan's interest rate of 1.22 percent was fair and equitable because this rate is now lower than the rate of inflation. Brief of Appellant at 41. Because the rate of inflation is higher than the interest rate set by the plan, the appellant argues that the analysis in *Till* "mandates the conclusion that the federal judgment rate is not sufficient to provide unsecured creditors with the present value of their claims." *Id*.

Though the appellant's claim is accurate, this court does not conclude the bankruptcy court was mistaken in determining that the plan was fair and equitable. In its order, the bankruptcy court specifically addressed the fact that the federal judgment rate at the time of confirmation was low, noting "[t]hat it is currently low is not unfair to judgment creditors (any more than it conferred a windfall at higher rates)." Confirmation Order at 19. Furthermore, the bankruptcy court explained how setting the interest rate at the federal judgment rate actually complied with the plurality's analysis in *Till*, because the federal judgment rate was objective, it provided unsecured creditors what they would receive outside the bankruptcy process, and because the federal judgment rate "properly reflect[ed] the substantial benefit to the unsecured creditor, who would otherwise likely receive only a fraction of its unsecured claim in a liquidation scenario." *Id*.

Ultimately, because this court can find no mistakes in the bankruptcy court's determination that the plan is fair and equitable, the appellant's fourth claim is denied. Thus, the bankruptcy court's decision that the plan is fair and equitable is affirmed.

### 5. *Impermissible Gerrymandering and Improperly Excluding Testimony*

The appellant's fifth claim is that the plan impermissibly gerrymanders classes of creditors in violation of 11 U.S.C. § 1122. Brief of Appellant at 41-45. The appellant's contention is that the appellant is substantially similar to the other

unsecured creditors in class five of the plan, and so its claims should be placed in the same class. *Id*. Furthermore, the appellant argues that the debtor's explanation for placing it separately in class six is farcical, and that the debtor only isolated the appellant so as to allow the plan to be confirmed despite the appellant's objection to the plan. *Id*.

The appellant further alleges by its tenth claim that the bankruptcy court improperly excluded testimony from its expert witness Kevin Spark, the in-house counsel for Dropbox. *Id*. at 56. At the parties' confirmation hearing, the appellant sought to introduce Spark's testimony that the appellant did not object to the plan for competitive reasons and that the two companies were not competitors. *Id*. at 57. The bankruptcy court excluded Spark's testimony after determining that allowing it now would result in an inequitable circumvention of attorney-client privilege. Transcript of Proceedings Held on June 27, 2017 at 247.

Prior to the confirmation hearing, at a hearing related to the debtor's motion to compel discovery responses, the appellant asserted that it could not produce any documents in response to the debtor's requests for all documents or communications related to Thru, the trademark litigation, or the fee award. Transcript of Proceedings Held on June 16, 2017 at 29. The appellant claimed that all matters related to Thru were being handled by in-house counsel at Dropbox, and thus attorney client privilege applied to shield these communications from discovery. *Id*. at 26-27.

The appellant now asserts that while it is true a party cannot use privilege as a sword and a shield, because the privilege previously claimed by the appellant never applied to Spark's testimony concerning his reasons for voting on the plan, it was erroneous for the bankruptcy court to exclude his testimony. Brief of Appellant at 58. The appellant thus requests this court reverse the confirmation order and direct that Spark's testimony be admitted. *Id*. Ultimately, the appellant's goal in admitting Spark's testimony is to demonstrate that, because the parties were not competitors, no justification existed for classifying the appellant's claim separately from the claims of other unsecured creditors.

The Fifth Circuit has made clear that "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Phoenix Mutual Life Insurance Company v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991), *cert. denied*, 506 U.S. 821 (1992). The Fifth Circuit has also made clear, however, that where a plan has been substantially consummated and third party creditors have received payment for their claims, a claim of impermissible gerrymandering has no practicable remedy "other than unwinding the plan." *In re The Pacific Lumber Company*, 584 F.3d at 251. Here, the parties agree that the plan has been substantially consummated and that unsecured creditors have received payments pursuant to the plan. Response and Objection at 25; Declaration of Lee Harrison at 7. Therefore, since this court cannot

grant any relief other than fully unwinding the plan, and doing so would result in harm to third parties, the appellant's fifth claim is dismissed as equitably moot. Furthermore, since the appellant's tenth claim only seeks to admit expert testimony on the issue of impermissible gerrymandering, the same reasoning compels this court to dismiss this claim as equitably moot.

### 6. *Unfair Discrimination*

The appellant's sixth claim is the plan unfairly discriminates against the appellant in favor of class 3 and class 5 in violation of 11 U.S.C. § 1129(b)(1). Brief of Appellant at 45. The appellant contends that the plan discriminates in favor of class 3, by allowing the members of Class 3 to perfect their liens as part of the plan. *Id*. at 47-48. The appellant further contends that the plan discriminates unfairly in favor of class 5 because it proposes to pay the appellant's claims over a longer period of time. *Id*. at 49-50. Interestingly, in addressing this issue the bankruptcy court gave no analysis of its own, opting instead to adopt the arguments and reasoning of the debtor found in the debtor's trial brief. Order Confirming Chapter 11 Plan, at 19. While this certainly raises questions surrounding the bankruptcy court's decision to confirm the plan despite the appellant's claim of unfair discrimination, it would be improper for this court to decide this issue.

The Fifth Circuit has determined that a court reviewing an appellant's claim of unfair discrimination can provide no relief other than unwinding the plan. *In re The*

*Pacific Lumber Company*, 584 F.3d at 251 (concluding that review of appellant's claim

unfair discrimination was barred by equitable mootness, since the "[t]hird-party

expectations cannot reasonable be undone, and no remedy for [this] contention [] is

practicable other than unwinding the plan.")  For the same reason this court must

dismiss the appellant's fifth claim, so too must this court dismiss the appellant's sixth

claim as equitably moot.

### 7. *Improper Releases and Exculpation*

The appellant's seventh claim contends that the bankruptcy court erred in

finding that the plan contained no impermissible third-party releases or exculpation

provisions.  Brief of Appellant at 50.  Specifically, the appellant contends that the

plan contains overly broad exculpation and release provisions that directly contravene

established Fifth Circuit precedent.  *Id*. at 52.  As a consequence, the appellant quests

that this court reverse the confirmation order and render a decision denying

confirmation of the plan.  *Id*.  If the court were to grant the full relief requested by

the appellant the plan would need to be unwound.  This court need not grant such

broad relief, however.

The Fifth Circuit in multiple instances has determined that "equitable

mootness need not foreclose an appeal from aspects of a Chapter 11 plan

confirmation that solely concern . . . releases."  *In re Hilal*, 534 F.3d at 501; see also

*In re The Pacific Lumber Company*, 584 F.3d at 252 (concluding that impermissible

third party releases were not shielded from review by equitable mootness). The appellees also concede this in their reply brief. Appellees' Reply Brief in Support of Motion to Dismiss at 6-7. Because partial relief on this claim is available, this claim is not equitably moot.

This court now addresses the merits of the appellant's seventh claim. At issue in this dispute are paragraphs 9.5 and 9.7 of the plan. This court will consider the appellant's objections to each paragraph in turn. Before doing so, however, this court must address the appellees' claim that this court cannot review either provision because the appellant did not raise objections concerning these provisions to the bankruptcy court. Appellees' Brief at 36-37.

This court finds the appellees' argument without merit. The record reveals that in the appellant did, in fact, raise objections to paragraphs 9.5 and 9.7 in the appellant's supplemental objection to confirmation of the amended plan. *See* Supplemental Objection to Confirmation at 9-10 (docket entry 8). Additionally, because the appellant properly raised objections to paragraphs 9.5 and 9.7 of the confirmation plan to the bankruptcy court, the appellees' argument that both release provisions were consensual is foreclosed. *See* Appellees' Brief at 39 (arguing that because appellant never objected to these provisions, they were impliedly consented to).

Paragraph 9.5, the injunction provision, provides that:

Except as otherwise expressly provided in this Plan or in the Confirmation Order and except in connection with the enforcement of the terms of this Plan (including the payment of Distributions hereunder) or any documents provided for or contemplated in this Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party or any property of any Protected Party with respect to any such Claim or Interest; (d) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to any Protected Party or any property of any Protected Party with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Interest.

Modified Chapter 11 Plan at 25, ¶ 9.5. The plan defines the term "Protected Party" to include the debtor, Thru, as well as Thru's officers, directors, employees, shareholders, advisors, attorneys, representatives and other agents. *Id*. at 7. Reading these provision together establishes that paragraph 9.5 of the plan bars the debtor's creditors from pursuing causes of actions against a number of non-debtor third parties, if those causes of action relate to the creditors' claims against the debtor.

The appellant argues that because the injunction found in paragraph 9.5 is broad enough to cover non-debtor third parties, including Thru's parent company and its directors, the injunction violates Fifth Circuit precedent which "seems broadly to foreclose non-consensual non-debtor releases and permanent injunction."  Brief of Appellant at 52 (citing *In re The Pacific Lumber Company*, 584 F.3d at 252).  This court agrees, and concludes that it was clearly erroneous for the bankruptcy court to approve the injunction in paragraph 9.5 of the plan.

The bankruptcy court relied upon section 105 of the Bankruptcy Code[13] when approving the injunction in paragraph 9.5 of the plan.  Confirmation Order at 4-5.  In *In re Zale*, however, the Fifth Circuit provided that an appellate court "must overturn a § 105 injunction if it effectively discharges a nondebtor."  *Feld v. Zale Corporation (In re Zale Corportion)*, 62 F.3d 746, 760 (5th Cir. 1995) (overturning injunction discharging a nondebtor because such an injunction violates section 524 of the Bankruptcy Code, which was designed only to discharge the debtor, not non-debtor parties).  Other circuits have reached the same conclusion.  See *American Hardwoods, Inc. v. Deutsche Credit Corporation (In re American Hardwords, Inc.)*, 885 F.2d 621, 624-26  (9th Cir. 1989) (accepting argument that a permanent injunction was improper because it would effectively discharge a nondebtor, an effect prohibited by

_____

[13]     11 U.S.C. § 105 provides, in pertinent part, that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Chapter 11]."

§ 524 of the Bankruptcy Code); *Landsing Diversified Properties-II v. First National Bank and Trust Company of Tulsa (In re Western Real Estate Fund, Inc.)*, 922 F.2d 592, 600 (10th Cir. 1990), *modified sub nom. Abel v. West,* 932 F.2d 898 (10th Cir. 1991).

Here, as shown above, the broad language of paragraph 9.5 would effectively discharge numerous non-debtor third parties, such as Thru Limited Liability Company and Thru's officers and directors, by barring creditors from collecting pre-petition debts from non-debtor third parties who may be co-liable. As such, it was clear error for the bankruptcy court to approve the injunction contained within paragraph 9.5 of the appellees' plan.

Paragraph 9.7, the exculpation provision, provides that:

> Neither the Debtor nor any of its present officers, directors, employees, agents, advisors, or affiliates, nor any of its Professionals (collectively, the "*Exculpated Persons*"), shall have or incur any liability to any Entity for any act taken or omission made in good faith in connection with or related to formulating, negotiating, implementing, confirming or consummating the Plan, the Disclosure Statement or any Plan Document. The Exculpated Persons shall have no liability to the Debtor, any Creditor, Interest holder, any other party in interest in the Chapter 11 Case or any other Entity for actions taken or not taken under the Plan, in connection herewith or with respect thereto, or arising out of their administration of the Plan or the property to be distributed under the Plan, in good faith, including failure to obtain Confirmation or to satisfy any condition or conditions, or refusal to waive any condition or conditions, to the occurrence of the Effective Date, and in all respects such Exculpated Persons shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Modified Chapter 11 Plan at 26, ¶ 9.7.  The appellant asserts that the language contained in this exculpation provision is similar to the exculpation language struck down by the Fifth Circuit in *In re The Pacific Lumber Company*, and thus it was clearly erroneous for the bankruptcy court to approve this provision and confirm the plan. Brief of Appellant at 52.  This court agrees.

In *In re The Pacific Lumber Company*, the plan in question released the debtor and its personnel from liability, other than for willfulness and gross negligence, "related to proposing, implementing, and administering the plan."  *In re The Pacific Lumber Company*, 584 F.3d at 251.  There, the Fifth Circuit determined that the broad exculpation provision contained in the plan was designed "to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy" which the fresh start provision in Bankruptcy Code section 524(e)[14] was not intended to do.  *Id*. at 252.  Here, Thru's plan releases Thru, its officers, directors, and various  other personnel from liability, except for acts or omissions made in bad faith, "in connection with or related to *formulating*, negotiating, *implementing*, confirming, or *consummating*" the plan, disclosure statement, or any plan document.  Modified Chapter 11 Plan at 25, ¶ 9.7 (emphasis added).

---

[14]     Section 524(e) provides "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

The appellees' attempts to distinguish their plan's exculpation language from that of the language used in *In re The Pacific Lumber Company* are unpersuasive. The appellees assert that the plan in *In re The Pacific Lumber Company* contained additional insulation for the debtor and non-debtor third parties because there the plan precluded liability from "any act or omission relating to (i) the management and operation of the debtors, (ii) the implementation of any of the transactions described in the plan, and (iii) any action taken in connection with the enforcement of the debtors' rights or the defense of any claims against third parties." Appellees' Brief at 40 (quoting First Amended Joint Plan of Reorganization, *In re The Pacific Lumber Company*, Case No. 07-20027 (Bankr. S.D. Tex. May 1, 2008) (docket entry 2800). The broad language contained in the appellees' exculpation provision would also provide the same insulation, however. Modified Chapter 11 Plan at 26 ¶ 9.7.

The appellees also assert that their exculpation provision is unique because it contains the express preservation of tolled claims, thereby preserving causes of action against Thru's management, parent company, and pre-petition lenders "if the plan fails for any reason and [Thru] is compelled to liquidate under chapter 7." Appellees' Brief at 40-41. While it is true that the debtor's plan contains tolled claims, a number of contingencies would need to occur for a creditor to effectively pursue a tolled claim. In short, this court finds that this facet of the plan is insufficient to prevent the exculpation provision from improperly "absolve[ing] the released parties

from any negligent conduct that occurred during the course of the bankruptcy." *In re The Pacific Lumber Company*, 584 F.3d at 252.

This court thus concludes that it was clear error for the bankruptcy court to approve paragraphs 9.5 and 9.7 of the appellees' plan. Accordingly this court reverses the bankruptcy court's decision concerning the plans' injunction and exculpation provisions, and remands this case to the bankruptcy court with instructions to strike aspects of paragraphs 9.5 and 9.7 concerning improper releases of non-debtor third parties.

### 8. *Best Interest of Creditors*

In its eighth claim, the appellant argues that the debtor has failed to prove that its plan is in the best interests of its creditors in violation of 11 U.S.C. § 1129(a)(7)(A), also known as the best-interests-of-creditors test. Brief of Appellant at 52-54. Specifically, the appellant contends that the debtor's liquidation analysis is flawed and fails to support the bankruptcy court's decision that creditors would receive more under the plan than they would if the debtor were liquidated under chapter 7. *Id*. at 53-54.

Confirmation of a chapter 11 plan must be denied where holders of impaired claims have not unanimously accepted the plan and the plan fails to provide the holders of these claims more than if the debtor were liquidated pursuant to Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7)(A). Thus, if the appellant's

contentions are correct and the debtor failed to prove that its creditors would receive more under the plan than in chapter 7, this court would be required to reverse the bankruptcy court's order and issue instructions to deny confirmation of the plan. No partial relief could be granted to avoid this result. Thus, for the same reasons enumerated in section (B)(1) of this opinion, this court must dismiss the appellant's eighth claim on grounds of equitable mootness.

### 9. *Appointing a Chapter 11 Trustee*

The appellant's ninth argument is that the bankruptcy court erred in denying the appellant's motion to appoint a Chapter 11 trustee. Brief of Appellant at 54. The Bankruptcy Code provides that:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> > (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
> >
> > (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104.  The appellant contends that the debtor's bad faith conduct in filing its case and plan warrants the appointment of a chapter 11 trustee for cause. Brief of Appellant at 55-56.  The appellant thereby requests that this court reverse the bankruptcy court's confirmation order and render a judgment appointing a Chapter 11 trustee.  *Id*.

By its very nature, the appellant's ninth contention is equitably moot.  The period in which a chapter 11 trustee may be appointed is "at any time *before* confirmation of a plan."  11 U.S.C. § 1104 (emphasis added).  Therefore, to appoint a chapter 11 trustee the entirety of the plan must be unwound, which, as discussed above, would adversely affect third parties.  Additionally, if a Chapter 11 trustee were appointed, the success of the plan would be affected.  One of the major duties of a Chapter 11 trustee is to "as soon as practicable, file a plan [of reorganization], file a report of why the trustee will not file a plan, or recommend conversion of the case to a case under chapter 7, 12, or 13 of this title, or dismissal of the case."  11 U.S.C. § 1106.  Thus, if the plan is reversed and a Chapter 11 trustee appointed, there is no guarantee that the trustee would even file a plan.  Instead, the trustee may opt instead to not file, convert the case, or dismiss it.  All of these alternatives would clearly impact the plan's success.  The appellant's ninth claim is thus dismissed as equitably moot.

10.  *Failure to Satisfy Federal Rules and Bankruptcy Rules*

While the appellant did not fully brief the issue[15], the appellant also raises the claim that the bankruptcy court erred by failing to fulfill its obligations under Federal Rules of Bankruptcy Procedure 7052[16] and 9014[17], as well as the obligations imposed by Federal Rule of Civil Procedure 52[18].  Brief of Appellant at 5.  It is the appellant's view that the bankruptcy court failed to provide an explanation of its ruling sufficient to facilitate appellate review by this court.  *Id*.  The appellant thus requests that this court remand the case to the bankruptcy court for elaboration.  *Id*.

---

[15]     It is questionable whether the appellant briefed this issue in its appeal. Although it did not dedicate a separate section of its brief to this issue, the appellant reiterated throughout its brief that the bankruptcy court failed to address the appellant's arguments as to the bad faith of the case and plan. Brief of Appellant at 24, 55, 58.

[16]     Rule 7052 of the  Federal Rule of Bankruptcy Procedure provides that Rule 52 of the Federal Rules of Civil Procedure applies in adversary proceedings.

[17]     Rule 9014 of the Federal Rules of Bankruptcy Procedure provides that Rule 7052 of the Federal Rules of Bankruptcy Procedure shall govern contested matters not otherwise governed by the bankruptcy rules.

[18]     Rule 52 of the Federal Rules of Civil Procedure provides, in pertinent part, that:

In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court.

On its face, this claim is not equitably moot. Simply remanding the case to the bankruptcy court for further elaboration would not require that the plan, or any of its constituent parts, be unwound. This does not mean that this court will accept the appellant's invitation to remand the case, however. The appellant provides no arguments as to why the bankruptcy court's confirmation order was inadequate, other than repeating throughout its brief that the bankruptcy court "never addressed any of Dropbox's arguments regarding bad faith or even mentioned the numerous and significant facts supporting bad faith." *Id*. at 18. Although the bankruptcy court may not have addressed the appellant's arguments of bad faith line-by-line in the court's confirmation order, this does not mean the bankruptcy court failed to provide an explanation of its ruling that the plan and case were filed in good faith. In its confirmation order, the bankruptcy court explicitly stated that it had examined the totality of the circumstances surrounding the formulation of the plan and concluded that the debtor "filed its chapter 11 case and proposed the Plan in good faith and with legitimate and honest purposes including to (i) preserve the Debtor's business for existing stakeholders, including creditors, employees, customers, and owners, and (ii) maximize the recovery to Creditors under the circumstances of this case." Confirmation Order at 21. This court fails to see how applying the totality of the circumstances test for good faith and reaching specific conclusions as to why the plan

was filed in good faith fails to provide an adequate explanation so as to facilitate appellate review. Accordingly, this claim is denied.

11. *Improper Waiver of 14-day stay*

The appellant also raises the issue that the bankruptcy court erred by waiving the 14-day stay required by Federal Rule of Bankruptcy Procedure 3020(e). Brief of Appellant at 6. This court declines to address this issue on appeal. The appellant did not brief this issue, meaning this issue is waived. See *McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984) ("[Courts of Appeal] will not consider issues not briefed."); see also *Zuccarello v. Exxon Corporation*, 756 F.2d 402, 407-08 (5th Cir. 1985) (a party waives an issue by failing to brief all issues to be considered on appeal).

## III. CONCLUSION

For the reasons stated above, all of the appellant's claims, except for its fourth, seventh, and tenth claims are **DISMISSED** as equitably moot. Additionally, for the reasons stated above, the bankruptcy court's judgment is **AFFIRMED** as to the appellant's fourth claim, and **REVERSED AND REMANDED** as to the appellant's seventh claim, and the appellant's tenth claim is **DENIED**.

**SO ORDERED.**

October 19, 2018.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**